IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BITMAIN TECHNOLOGIES GEORGIA LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No: ) |
| HYLMEN LLC, and | ) ) ) |
| SHAWN VAUGHT, | ) ) |
| Defendants. | ) ) |

## COMPLAINT

COMES NOW Plaintiff, Bitmain Technologies Georgia Limited ("Bitmain" or "Plaintiff"), and as its Original Complaint against Hylmen LLC ("Hylmen") and Shawn Vaught ("Vaught") (collectively, the "Defendants"), respectfully states as follows:

This lawsuit relates to Bitmain's efforts to recover its own property (approximately 4,513 S19J Pro mining machines used for Bitcoin mining that are owned by Bitmain, hereinafter "Bitmain's Miners" or "Miners") from Defendants, who transported Bitmain's Miners across state lines from South Carolina to a site or sites in Missouri owned by Defendants without Bitmain's knowledge or permission. Furthermore, Defendants, despite knowing that Bitmain claimed ownership of the Miners, refused to permit Bitmain to inspect and audit the Miners fully, much less give custody of them to Bitmain. Indeed, Defendants have refused to release Bitmain's Miners, even though Defendants do not have **any** ownership interest in them.

This situation is urgent because Bitmain has reason to believe that its Miners are not being maintained properly and may be irreparably damaged, that Defendants have not fully disclosed where all of Bitmain's Miners are located, and that Defendants have admitted turning custody of

some Miners over to third parties. Thus, it is essential that a receiver be appointed over Bitmain's Miners immediately. Only through a court-appointed limited receivership will the security of Bitmain's Miners be protected properly as soon as possible.

Ultimately, Bitmain seeks an order from the Court compelling the return of Bitmain's Miners, as well as damages for any harm caused by Defendants' wrongful conversion of Bitmain's Miners.

## INTRODUCTION

1. In mid-2021, Bitmain engaged a company called Blockquarry Corp. (formerly known as ISW Holdings, Inc. ("Blockquarry")) to host the Bitmain Miners pursuant to several contracts between Bitmain and Blockquarry. Beginning in March 2022, Blockquarry provided hosting, operation, and maintenance services for Bitmain's Miners to mine Bitcoin at a data-center facility leased by Blockquarry in Gaffney, South Carolina.

2. Upon information and belief, between approximately January 2023 and November 2023, Blockquarry was in a dispute with the owner of the Gaffney site. In January-February 2023, the owner cut off the electricity from the data-center facility, padlocked it, and restricted access to Bitmain's Miners.

3. During the time the electricity to Bitmain's Miners was turned off, they were rendered non-functional, causing various damages. As a result, Bitmain terminated the relationship and demanded the release of the Bitmain Miners, which had a value of millions of dollars.

4. Blockquarry regained access to the Miners in November 2023—9 months after the facility was padlocked—after coming to a settlement agreement with the data-center facility's owner and master landlord. Nevertheless, despite Bitmain's request, Blockquarry did not provide

2

Bitmain with access to or use of its Miners. Instead of returning the Miners to Bitmain, as required under the contracts between Bitmain and Blockquarry, and without Bitmain's authorization and over its objections, Blockquarry arranged to transport the Miners offsite to Missouri.

5. Upon information and belief, Defendants conspired with Blockquarry and/or its affiliate/agent Pantheon Resources plc ("Pantheon") and, in November-December 2023, caused the unauthorized transportation of Bitmain's Miners to Defendants' property at 29590 Highway U, Crocker, Missouri (the "Crocker Site"), where some or all of Bitmain's Miners are located today.

6. Upon information and belief, Pantheon subsequently prepared an inventory of the miners at the Crocker Site, which Bitmain received in May 2024. Based upon Bitmain's review of the serial numbers of the miners identified in Pantheon's inventory, cross-referenced against Bitmain's own inventory of the Miners located at the South Carolina Facility, at least approximately 4,300 of Bitmain's Miners were located at the Crocker Site.

7. Upon information and belief, some of Bitmain's Miners may be located at one or more additional sites in Missouri under Defendants' control, including but not limited to property leased by Defendant Vaught, located at 7566 State Hwy A, Lentner, MO 63450.

8. Defendants have refused to surrender the Bitmain Miners to Bitmain, despite the termination of the contracts between Blockquarry and Bitmain.

9. Bitmain has requested Defendants to permit Bitmain to inspect the Miners at the Crocker Site to determine which Miners are Bitmain's and assess their condition. Although a partial inspection of the available Miners (none of which were under electric power) took place in late December 2023, to date Defendants have refused to permit Bitmain to conduct a complete inspection of the facility and audit of the Miners located there. Defendants have not explained

why they refuse to permit Bitmain to perform a full inspection, and their refusal is puzzling as Blockquarry has ostensibly requested Defendants to allow Bitmain to inspect the Miners and Blockquarry has been separately granted access to conduct an inspection.

10. The Bitmain Miners are being wrongfully and unlawfully detained by one or more of the Defendants.

11. Bitmain's right to possession of the Miners is superior to that of any other person or entity, including the Defendants.

12. The Bitmain Miners have not been taken for any execution or process of law nor for any tax, assessment, or fine pursuant to statute.

## PARTIES

13. Plaintiff Bitmain is a corporation incorporated in the State of Georgia and maintains its principal place of business in Beijing, People's Republic of China.

14. Upon information and belief, Defendant Hylmen LLC is a Wyoming corporation with its principal place of business at 29590 Highway U, Crocker, Missouri.

15. Upon information and belief, Defendant Shawn Vaught is an individual residing at 26 Spruce Road, Iberia, Missouri. Upon information and belief, Defendant Vaught is the principal of Defendant Hylmen.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Diversity of citizenship exists because Plaintiff is a citizen of Georgia and China, Defendant Vaught is a citizen of Missouri, and Defendant Hylmen is also a citizen of Missouri.

16. This Court has personal jurisdiction over Defendants because they reside and

4

conduct business in Missouri and this Judicial District and because the events regarding Defendants' possession and control of Bitmain's Miners and refusal to return them to Bitmain or permit an inspection occurred in and continue to occur in Missouri and this Judicial District.

17. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Defendants are residents of Missouri and this Judicial District, a substantial part of the events giving rise to the claims occurred in this Judicial District, and a substantial part of the property that is the subject of the action is situated in this Judicial District.

## FACTUAL BACKGROUND

1. ***Bitmain Enters into Agreements with Blockquarry for Hosting Its Miners in South Carolina.***

18. On June 21, 2021, Bitmain entered into a Service Framework Agreement with Blockquarry ("Prior Agreement"), under which Blockquarry agreed to host, operate, and maintain Bitmain Miners at a data-center facility located at 154 Hyatt St., Gaffney, South Carolina (the "South Carolina facility"). A true and correct copy of the Prior Agreement is attached hereto as **Exhibit 1**.

19. Pursuant to the Prior Agreement, Bitmain delivered all or substantially all of the Miners to the South Carolina facility between February 7, 2022 and April 11, 2022. Under the Prior Agreement, hosting services were to commence in March 2022. *See* Ex. 1, Annex 2, ¶ 2.

20. Effective September 1, 2022, Bitmain entered into the Service Framework Agreement at issue with Blockquarry (the "Operative Agreement" or "OA"). A true and correct copy of the Operative Agreement is attached hereto as **Exhibit 2**. The OA terminated the Prior Agreement. Ex. 2, ¶ 2.1-2.4. The OA affirmed Blockquarry's obligations to host, operate, and maintain Bitmain's Miners at the South Carolina facility and confirmed that Bitmain had delivered the Miners to the South Carolina facility. Ex. 2, App'x II-III.

21. Blockquarry's hosting, operation, and maintenance obligations under the OA include, *inter alia*, "[e]nsuring safety and security of the [South Carolina facility] and the [Miners]" and "[m]aintaining stable electrical power supply, network connection and overall conditions of the [South Carolina facility] . . . sufficient for the [Miners] to achieve [their] normal operating status." Ex. 2, App'x III.

22. Under the Operative Agreement, if Blockquarry failed to "ensure continuous electrical power supply" and caused "15 days of electricity outage on an accumulative basis during one [month]," Bitmain was "entitled to remove all or any of the [Miners] from the [South Carolina facility]." Ex. 2, ¶ 7.11.

23. Additionally, if the online percentage of the Miners was "less than 90% due to any substandard conditions of the [South Carolina facility], including but not limited to, power connection [and/or] network connection," and Blockquarry failed to remedy the substandard conditions within 30 days, Bitmain was entitled to terminate the OA with immediate effect. Ex. 2, ¶ 7.9.

   **2. *The South Carolina Facility's Power Is Shut Off and the Facility Is Padlocked.***

24. Upon information and belief, Blockquarry did not own the South Carolina facility. Litchain Corp. ("Litchain") leased the South Carolina facility from the Gaffney Board of Public Works ("Gaffney BPW"), the owner of the South Carolina facility, and Blockquarry, in turn, subleased the South Carolina facility from Litchain.

25. Upon information and belief, on January 9, 2023, Gaffney BPW stopped providing electricity to the South Carolina facility, and on February 16, 2023, Gaffney BPW padlocked the premises and blocked physical access to the South Carolina facility. Bitmain's Miners were not able to mine any Bitcoin, and Bitmain was not able to remove any of its Miners.

26. On April 6, 2023, Bitmain notified Blockquarry that it was terminating the OA ("Notice of Termination") due to Blockquarry's failure to remedy the substandard power connection within 30 calendar days. A true and correct copy of the Notice of Termination is attached hereto as **Exhibit 3**. Bitmain further demanded a 10% reduction in the Hosting Unit Price[1] from the date Gaffney BPW stopped providing electricity to the South Carolina facility through the Notice of Termination date.

27. Importantly, the Notice of Termination included Bitmain's intent to immediately remove the Miners from the South Carolina facility. But Blockquarry failed to provide Bitmain with access to the South Carolina facility, thereby preventing Bitmain from taking possession of the Miners.

### 3. *The South Carolina District Court Litigation.*

28. On April 7, 2023, Blockquarry sued Litchain and Gaffney BPW in the United States District Court for the District of South Carolina. *Blockquarry Corp. v. Litchain Corp. et al.*, C.A. No. 7:23-cv-01427. Bitmain was not a party to the South Carolina District Court litigation.

29. On April 10, 2023, Blockquarry filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction requesting an order that the property located in the South Carolina facility, including the Miners, be immediately released.

30. On April 12, 2023, the South Carolina District Court denied Blockquarry's request for a Temporary Restraining Order, but deferred ruling on the Preliminary Injunction until it was fully briefed.

31. On May 24, 2023, Gaffney BPW filed its Response to Blockquarry's Motion for

---

[1] All capitalized terms are defined in the Operative Agreement unless otherwise specified.

Preliminary Injunction and attached inventory lists of Bitmain's Miners (with serial numbers) based on a routine inspection that Bitmain performed prior to Gaffney BPW padlocking the South Carolina facility. Gaffney BPW submitted other inventory lists prepared by other third parties that had separate Bitcoin mining machines at the South Carolina facility. Gaffney BPW confirmed that no other third party claimed an interest or ownership in any of Bitmain's Miners, and Blockquarry did not object to these inventory lists in its reply brief.

32. No ruling came for the Motion for Preliminary Injunction because on November 2, 2023, the parties submitted a joint stipulation dismissing all claims and crossclaims with prejudice pursuant to a confidential settlement agreement. Neither Gaffney BPW nor Blockquarry permitted Bitmain to see a copy of the confidential settlement agreement. But Gaffney BPW represented to Bitmain that the terms of the settlement agreement required Blockquarry to return the Miners to Bitmain by December 19, 2023. A true and correct copy of the representation from Gaffney BPW to Bitmain regarding the return of the Miners is attached hereto as **Exhibit 4**.

4. ***Blockquarry and Defendants Transport the Miners from South Carolina to Missouri Without Bitmain's Permission.***

33. On November 3, 2023, Blockquarry informed Bitmain of its intent to move the Miners from South Carolina to Jackson County, Missouri.[2] Bitmain repeatedly objected to Blockquarry's plan and demanded that Bitmain be permitted to retrieve the Miners itself from the South Carolina facility, pursuant to its rights under the OA. *See, e.g.*, Ex. 2, ¶ 7.11.

34. Despite Bitmain's objections, on November 7, 2023, Blockquarry informed Bitmain that the Miners had been removed from the South Carolina facility and that Blockquarry

---

[2] Blockquarry's claim that Bitmain's Miners were being transported to Jackson County, Missouri was false.

8

was in the process of transporting them to Missouri.

35. Upon information and belief, Defendants Shawn Vaught and/or Hylmen LLC transported Bitmain's Miners across state lines to Missouri.

36. Bitmain requested—on at least six occasions—that Blockquarry provide information about the status of the Miners, such as photos and videos of the conditions and packaging of the Miners, the address of the Missouri facility, the estimated date of arrival of the Miners at the Missouri facility, and Blockquarry's availability for a call to address the logistics for returning the Miners to Bitmain. Blockquarry ignored these requests. Blockquarry's actions transcended violating the terms of the OA, and Bitmain, believing Blockquarry's conduct criminal in nature, reported the conduct to the Gaffney, South Carolina and Jackson County, Missouri police.

37. On November 22, 2023, Blockquarry or "@blockquarryco" posted images of storage containers located in Missouri on the X social-media platform, claiming that the location shown in the images was the "initial Missouri site."



9

38. Upon information and belief, the location depicted in the Blockquarry post on X was 7566 State Hwy A, Lentner, MO 63450 (the "Lentner Site").

5. *The Lentner Site.*

39. After seeing the X post regarding Blockquarry's "initial Missouri site," Bitmain conducted its own investigation to identify where in Missouri Blockquarry wrongfully transferred the Miners to.

40. On information and belief, some of the Bitmain Miners are or were located on a property leased by Defendant Vaught, located at the Lentner Site.

41. Upon information and belief, Shawn Vaught leases the Lentner Site, which is used for Bitcoin mining-related activities.

42. On December 7, 2023, Bitmain representatives traveled to the Lentner Site to confirm the location of the Miners.

43. Upon information and belief, there were two storage containers at the Lentner Site appearing to contain some of the Bitmain Miners. The two containers are displayed in the pictures below.

 

6. *The Crocker Site.*

44. It was not until December 13, 2023 that Blockquarry deigned to provide any

substantive response about the location of Bitmain's Miners. It demanded that Bitmain release all claims against Blockquarry before Blockquarry would agree to provide the precise location of the Missouri facility or allow Bitmain access to the facility to inspect and retrieve the Miners. A true and correct copy of the release that Blockquarry demanded Bitmain sign is attached hereto as **Exhibit 5**.

45. On December 15, 2023, Bitmain informed Blockquarry that it would not accede to Blockquarry's extortionate conduct and again requested that Blockquarry immediately disclose the location of the Miners and provide access. On December 19, 2023, over a month after Blockquarry unilaterally and without authorization removed Bitmain's Miners from the South Carolina facility, Blockquarry finally agreed to permit Bitmain to inspect the Miners and provided Bitmain with the address of the Missouri facility—29590 Highway U, Crocker, Missouri, 65452 (the "Crocker Site"). A true and correct copy of the communication from Blockquarry to Bitmain providing the address of the Crocker Site is attached hereto as **Exhibit 6**.

46. On December 28, 2023, pursuant to an agreement with Blockquarry, Bitmain visited the Crocker Site for purposes of inspecting and collecting inventory of the Miners. Bitmain's inspection and inventory revealed there were missing and damaged Miners. Further, the investigation was restricted to a limited number of storage containers (four of which are shown in the picture below taken during the inspection). None of the Miners were powered on.



11

Case 6:24-cv-03183-MDH   Document 1   Filed 06/25/24   Page 11 of 17

47. As shown in the following photographs taken by its personnel during the limited December 28 inspection, Bitmain observed water leakage in the containers storing the Miners, which, upon information and belief, caused water damage to Miners that were placed on the floor of the containers.



48. Bitmain observed Miners with rusted fans and, upon disassembling three Miners for a more thorough inspection, found that all three Miners had internal rust, including rust on the hashrate board, a critical component of a mining machine.



49. Because Bitmain was not permitted to inspect all of the containers at the Crocker Site during the December 28 inspection and because none of the containers were powered, it was not able to prepare a complete inventory of the Bitmain Miners on site or to assess their condition.

12

50. Based upon this initial inspection, and upon information and belief, Bitmain's Miners have been and are without power and have been and are subject to inadequate environmental controls, including insufficient moisture control and inappropriate temperature settings, which are critical given the Miners' sensitivity to environmental conditions.

51. Further, this initial inspection showed that the Miners have been and are subjected to extensive mismanagement and physical damage, including disconnection from a power source, rusted fans, and internal rust, including rust on the hashrate board, a critical component of a mining machine.

52. The environmental conditions have already subjected the Miners to excessive moisture during the spring and winter seasons. With the arrival of summer, the exposure to high heat in the upcoming months further compounds these risks. These adverse conditions are highly likely to accelerate the deterioration of the Miners, potentially rendering them irreparable.

53. Although a partial inspection of a small sample of Miners in containers that were not under electric power took place in late December 2023, Defendants have refused to permit Bitmain to conduct a complete inspection of the facility and audit of the Miners located there. Defendants have not explained why they will not permit Bitmain to perform a complete inspection now, even though Bitmain previously conducted the partial inspection of the Miners in December 2023.

54. Despite multiple continued requests from Bitmain for inspections at the Crocker Site, Defendants have consistently refused to permit such inspections.

55. In particular, Bitmain's Missouri counsel attempted to visit the site on April 9, 2024, but Defendants refused to permit any inspection on the property, let alone inside the containers.

56. Counsel for Defendants told Bitmain's Missouri counsel that Defendants had already distributed an unidentified number of miners from the Crocker Site to unidentified third parties who allegedly presented evidence of ownership.

57. Furthermore, communications with counsel for Defendants initially appeared cooperative in April 2024, but by mid-May 2024, Defendants' counsel went dark, ceasing all communication with Bitmain's counsel and leaving Bitmain without any recourse other than this lawsuit. This series of refusals and lack of communication raises serious concerns about Defendants' motives and confirms the urgent need for the Court to appoint a receiver to take control of the Miners immediately.

## COUNT I
## REPLEVIN

58. Bitmain incorporates herein the allegations contained in paragraphs 1-57 as though fully set forth herein.

59. Bitmain is the lawful owner of the Miners and is entitled to immediate possession of them. *See* Sales and Purchase Agreement, attached hereto as **Exhibit 7**.

60. The Bitmain Miners have a present value in excess of $4,000,000. For each day the Miners are not operating and mining Bitcoin, Bitmain suffers additional damage in the amount of approximately 0.78 BTC (presently valued at approximately $51,000).

61. Hylmen and Vaught have wrongfully retained possession of the Bitmain Miners and have failed to surrender the Miners from their possession and return them to Bitmain, despite Bitmain's repeated requests.

62. Bitmain's Miners have not been seized by Defendants pursuant to any legal process. Defendants knew or should have known that they had no legal right to possess Bitmain's Miners or to maintain possession of the Miners.

63. In an effort to deceive Bitmain, Defendants Hylmen and Vaught, in coordination with Pantheon and/or Blockquarry, moved the Miners from the South Carolina facility to unknown locations in Missouri in an attempt to hide the Miners and prevent their recovery.

64. If the Court does not intervene immediately, Bitmain is in danger of losing its Miners. As demonstrated by their previous actions, Defendants have the ability to hide and move the Miners, thereby preventing Plaintiff from recovering its Miners.

WHEREFORE, Bitmain requests judgment against Defendant Hylmen and Defendant Vaught for an Order of Delivery in Replevin for the recovery of the Bitmain Miners, with damages for wrongful detention; for Bitmain's costs of suit; and for such further relief as the Court deems appropriate and just.

## COUNT II
## CONVERSION

65. Bitmain incorporates herein the allegations contained in paragraphs 1-64 as though fully set forth herein.

66. Plaintiff is the lawful owner of the Miners, possessing all corresponding ownership rights, including the right to possess, use, and manage the Miners.

67. Despite Plaintiff's lawful ownership and presenting documentation asserting its ownership rights, Defendants have willfully withheld access to and possession of the Miners from Plaintiff.

68. Defendants' actions constitute an unauthorized assumption and exercise of the right of ownership over the Miners, to the exclusion of the rights and entitlements of Plaintiff.

69. Defendants' refusal to allow inspection and continued possession of the Miners has deprived Plaintiff of its rightful property and the ability to manage, control, or benefit from the Miners.

15

70. The actions of Defendants were intentional, without consent or justification, and are contrary to the rights of Plaintiff, thereby constituting conversion.

71. As a direct and proximate result of Defendants' wrongful actions, Plaintiff has suffered damages and continues to suffer damages in an amount to be determined at trial.

72. Plaintiff is entitled to recover the full value of the Miners, or damages for the diminished value thereof, due to Defendants' unauthorized control and detrimental handling of the Miners.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

(a) The appointment of a receiver over Plaintiff's Miners;

(b) An Order directing Defendants to immediately grant full access, custody, and control of Plaintiff's Miners to Plaintiff;

(c) Judgment in favor of Plaintiff and against Defendants for actual damages in an amount to be proven at trial and punitive damages;

(d) An award of reasonable attorneys' fees and costs of this action; and

(e) Such other and further relief as the Court deems just and proper.

Dated: June 25, 2024                                  Respectfully submitted,
                                                      TUCKER ELLIS LLP


                                                      By: /s/ Nicholas Clifford, Jr.
                                                          Nicholas Clifford, Jr. #MO44477
                                                          100 S Fourth Street, Suite 600
                                                          St. Louis, MO 63102
                                                          314.256.2550
                                                          314.256.2549 FAX
                                                          Nicholas.clifford@tuckerellis.com

                                                      Attorneys for Plaintiff Bitmain Technologies
                                                      Georgia Ltd.