# EXHIBIT 7

# SALES AND PURCHASE AGREEMENT

## BETWEEN

### Burdy US Corporation
("Seller")

## AND

### BITMAIN TECHNOLOGIES GEORGIA LIMITED
("Purchaser")



This agreement (this "Agreement") is made on January 22th, 2024 by and between Burdy US Corporation (the "Seller"), with its registered office at 1013 Centre Road, Suite 403S, Wilmington, DE 19805, County of New Castle, USA, and BITMAIN TECHNOLOGIES GEORGIA LIMITED (the "Purchaser"), with its registered office at 840 New Burton Street, Suite 201, Dover, Kent, DE 19904.

The Seller and the Purchaser shall hereinafter collectively be referred to as the "Parties," and individually as a "Party."

Whereas:

1. Purchaser fully understands the market risks and the market fluctuations relating to the Products sold under this Agreement.

2. Seller acquired the Products and owns them.

3. Blockquarry Corp., formerly ISW Holdings, Inc., originally obtained possession of the Products pursuant to a Service Framework Agreement between Blockquarry and Purchaser ("Hosting Agreement"), with Purchaser acting as Seller's agent in relation to the Products, and continues to possess the Products and has failed to cooperate in returning them.

4. Purchaser is willing to purchase and Seller is willing to sell the Products.

5. Based on the information presently available to them regarding the location of the Products, the Parties understand that the Products, or a portion of them, were originally delivered to Blockquarry Corp. ("Blockquarry"), formerly ISW Holdings, Inc., at the site located at 154 Hyatt St., Gaffney, SC 29341, and were subsequently moved by Blockquarry without Purchaser or Seller's authorization to a site in Crocker, Missouri.

6. Seller desires that Purchaser quickly make arrangements with Blockquarry for Purchaser to obtain access to the Products and remove them to such facility as Purchaser shall designate.

The Parties hereto agree as follows:

1. **Definitions and Interpretations**

The following terms, as used herein, have the following meanings:

"Assigned Claims" means present or future claims and causes of action Seller has or may have against Blockquarry, or its directors, officers, principals, partners, members, shareholders, affiliates, employees, agents, or representatives, related to or arising out of the Products or the Hosting Agreement, including, but not limited to, Blockquarry's refusal to return the Products or unauthorized use or transportation of the Products, damage to the Products, missing or lost Products, or loss of use of the Products.

"Applicable Law" means any treaty, law, decree, order, regulation, decision, statute, ordinance, rule, directive, code or other document that has legal force under any system of law, including, without limitation, local law, law of any other state or part thereof or international law, and which creates or purports to create any requirement or rule that may affect, restrict, prohibit or expressly allow the terms of this Agreement or any activity contemplated or carried out under this Agreement.

"Force Majeure" means in respect of either Party, any event or occurrence whatsoever beyond the reasonable control of that Party, which delays, prevents or hinders that Party from performing any obligation imposed upon that Party under this Agreement, including to the extent such event or occurrence shall delay, prevent or hinder such Party from performing such obligation, war (declared or undeclared), terrorist activities, acts of sabotage, blockade, fire, lightning, acts of god, national strikes, riots, insurrections, civil commotions, quarantine restrictions, epidemics, earthquakes, landslides, avalanches, floods, hurricanes, explosions and regulatory and administrative or similar action or delays to take actions of any governmental authority.

"Order" means Purchaser's request to Seller for certain Products in accordance with this Agreement.

"Products" means the 4,513 Bitcoin mining machines delivered by Purchaser to the site located at 154 Hyatt St., Gaffney, SC 29341in or around the period February to April 2022, including but not limited to the Bitcoin mining machines listed in Appendix B.

"Total Purchase Price" means the aggregate amount payable by Purchaser.

Interpretations:
i) Words importing the singular include the plural and vice versa where the context so requires.
ii) The headings in this Agreement are for convenience only and shall not be taken into consideration in the interpretation or construction of this Agreement.
iii) References to Clauses and Appendix(es) are references to Clauses and Appendix(es) of this Agreement.
iv) Unless specifically stated otherwise, all references to days shall mean calendar days.
v) Any reference to a code, law, statute, statutory provision, statutory instrument, order, regulation or other instrument of similar effect shall include any re-enactment or amendment thereof for the time being in force.

## 2. Sales of Products

Seller agrees to sell and provide to Purchaser the Products, free and clear of any and all pledges, liens, charges, encumbrances and security interests of any kind or nature (collectively, the "Liens") in accordance with provisions of Clause 2, Clause 3, Clause 4 and Clause 5 of this Agreement, and Purchaser shall make payment in accordance with the terms specified in this Agreement. Seller shall (i) transfer, assign, convey and deliver to Purchaser ownership of the Products free and clear of any and all Liens, and (ii) deliver a

duly executed bill of sale in the form attached hereto as Appendix B, in each case upon full execution of this Agreement.

2.1. Both Parties agree as follows:
    (i) Purchaser shall place the Order substantially in the form of Appendix A through methods accepted by Seller.
    (ii) After receiving the Order, Seller will send an order receipt confirmation email to Purchaser.
    (iii) Purchaser shall pay the down payment in accordance with Clause 3.1 and Appendix A of this Agreement.
    (iv) Upon receipt of the down payment, Seller will send a shipping confirmation to Purchaser after it has delivered the Products to the carrier, and the Order shall be deemed accepted by the Seller upon the Seller's issuance of the shipping confirmation.

**3. Prices and Terms of Payment**

3.1 The Purchaser shall pay the Total Purchase Price in accordance with Appendix A of this Agreement.

3.2 The Parties understand and agree that the Total Purchase Price is exclusive of the insurance fee, tax, applicable bank transaction fee and the logistics costs of shipping from place of delivery designated by Seller to the designated place of Purchaser, relevant maintenance or other applicable costs of Purchaser to purchase the Products, and any and all applicable import duties, taxes and governmental charges. The Products purchased by Purchaser from Seller may be resold to the customer of the Purchaser, under which circumstance and pursuant to the relevant tax regulation of the United States, Seller shall not charge any additional turnover tax in relation to the Products or the payment of any amount made by Purchaser under this Agreement, including but not limited to sales and use tax, value-added tax and any other governmental charges and duties similar to the turnover taxes. Except for the fees explicitly agreed to in this Agreement, which shall be borne by Seller, any other fees not included in the Total Purchase Price shall be borne by Purchaser.

**4. Customs**

4.1 Seller hereby confirms that it has obtained in due time and maintained throughout the term of this Agreement (if applicable) any and all approvals, permits, authorizations, licenses and clearances for the import of the Products into the United States that are required to be obtained by Seller or the carrier under Applicable Laws. Seller shall, upon request of Purchaser, provide full package of the custom clearance documents in respect of the import of the Products into the United States.

**5 Representations and Warranties**

Each of the Parties makes the following representations and warranties to the other Party:

5.1 It has the full power and authority to own its assets and carry on its businesses.

5.2 The obligations expressed to be assumed by it under this Agreement are legal, valid, binding and enforceable obligations.

5.3 It has the power to enter into, perform and deliver, and has taken all necessary action to authorize its entry into, performance and delivery of, this Agreement and the transactions contemplated by this Agreement.

5.4 The entry into and performance by it of, and the transactions contemplated by, this Agreement do not and will not conflict with:
(i) any Applicable Law;
(ii) its constitutional documents; or
(iii) any agreement or instrument binding upon it or any of its assets.

## 6 Indemnification and Limitation of Liability

6.1 Notwithstanding anything to the contrary herein, each Party shall under no circumstances, be liable to the other Party for any consequential loss, or loss of goodwill, business, anticipated profits, revenue, contract, or business opportunity arising out of or in connection with this Agreement, and each Party hereby waives any claim it may at any time have against the other Party in respect of any such damages. The foregoing limitation of liability shall apply whether in an action at law, including but not limited to contract, strict liability, negligence, willful misconduct or other tortious action, or an action in equity.

6.2 Each Party's cumulative aggregate liability pursuant to this Agreement, whether arising from tort, breach of contract or any other cause of action, shall be limited to and not exceed the amount of one hundred percent (100%) of the down payment actually received by Seller from the Purchaser for the Products.

## 7 Mutual Release and Assignment of Claims

7.1 In accordance with the terms hereof, and except as expressly agreed herein, each Party hereby releases, acquits, remits and forever discharges the other Party, and each of its current and former directors, officers, attorneys, agents, and other representatives, from and against any claims, liens, demands, actions, causes of action, suits, debts, accounts, covenants, indemnities, damages, costs, attorneys' fees, fines, penalties, judgments, obligations and liabilities of any kind, nature or description, whether in law or in equity, whether compulsory or permissive, whether sounding in tort, contract, statutory, regulatory violation or otherwise, arising out of or relating to the Hosting Agreement or the Products, whether known or unknown, discovered or undiscovered, vested or contingent, liquidated or unliquidated, direct, derivative or subrogated in any fashion existing as of the Effective Date. Nothing in this paragraph is intended to affect or reduce the Assigned Claims.

7.2 Seller represents and warrants as of the date it executes this Agreement that (a) it has not assigned, transferred or pledged the Assigned Claims, and the Assigned Claims

are free and clear of any third party claim, security interest, pledge or other right; and (b) no contractual prohibition or restriction exists to preclude or prevent the full transfer and assignment of the Assigned Claims.

7.3 Seller hereby unconditionally transfers and assigns to Purchaser all of the Assigned Claims.

## 8 Distribution

This Agreement does not constitute a distributor agreement between Seller and Purchaser. Therefore, Purchaser is not an authorized distributor of Seller.

## 9 Confidentiality and Communications

All information concerning this Agreement and matters pertaining to or derived from the provision of Products pursuant to this Agreement between the Parties, whether in oral or written form, or in the form of drawings, computer programs or other, as well as all data derived therefrom ("Confidential Information"), shall be deemed to be confidential and, as such, may not be divulged to any unauthorized person. Each Party undertakes and agrees to take all reasonable and practicable steps to ensure and protect the confidentiality of the Confidential Information which shall not be passed, sold, traded, published or disclosed to any unauthorized person. The Parties agree that Purchaser may disclose this Agreement to Blockquarry.

## 10 Term and Termination of this Agreement

10.1 This Agreement will be effective as of the date hereof and shall remain effective through the delivery of the last batch of Products.

10.2 The Parties agree that, unless this Agreement specifies otherwise, no Party shall terminate this Agreement in advance.

10.3 Termination of this Agreement shall be without prejudice to the rights and liabilities of the Parties accrued prior to or as a result of such termination, including those related to antecedent breaches. Termination of this Agreement for any cause or otherwise shall not release a Party from any liability which at the time of termination has already accrued to the other Party or which thereafter may accrue in respect of any act or omission prior to such termination. The rights and obligations of the Parties under Clause 1 (Definitions and Interpretations), Clause 9 (Confidentiality and Communications), Clause 10 (Term and Termination of this Agreement) and Clause 14 (Governing Law and Dispute Resolution) shall survive the termination of this Agreement.

## 11 Entire Agreement and Amendment

This Agreement, constitutes the entire agreement of the Parties hereto and can only be amended with the written consent of both Parties or otherwise as mutually agreed by both Parties.

## 12 Assignment

12.1 Neither Party shall assign or transfer any of its rights, benefits or obligations under this Agreement in whole or in part without the other Party's prior written consent.

12.2 This Agreement shall be binding upon and inure to the benefit of each Party to this Agreement and its successors in title and permitted assigns.

## 13 Severability

To the extent possible, if any provision of this Agreement is held to be illegal, invalid or unenforceable in whole or in part by a court, the provision shall apply with whatever deletion or modification is necessary so that such provision is legal, valid and enforceable and gives effect to the commercial intention of the Parties. The remaining provisions of this Agreement shall not be affected and shall remain in full force and effect.

## 14 Governing Law and Dispute Resolution

14.1 This Agreement shall be solely governed by and construed in accordance with the laws of the State of Georgia, the United States.

14.2 All disputes arising under this agreement shall be governed by and interpreted in accordance with the laws of the State of Georgia, without regard to principles of conflict of laws. The parties to this agreement will submit all disputes arising under this agreement to arbitration in Houston, Texas before a single arbitrator of the American Arbitration Association ("AAA"). The arbitrator shall be selected by application of the rules of the AAA, or by mutual agreement of the parties, except that such arbitrator shall be an attorney admitted to practice law in the State of Georgia. No party to this agreement will challenge the jurisdiction or venue provisions as provided in this section. No party to this agreement will challenge the jurisdiction or venue provisions as provided in this section. Nothing contained herein shall prevent the party from obtaining an injunction. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

## 15 Waiver

Failure by either Party to enforce at any time any provision of this Agreement, or to exercise any election of options provided herein shall not constitute a waiver of such provision or option, nor affect the validity of this Agreement or any part hereof, or the right of the waiving Party to thereafter enforce each and every such provision or option.

Case 6:24-cv-03183-MDH   Document 1-8   Filed 06/25/24   Page 8 of 15

## 16 Counterparts and Electronic Signatures

This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, will be deemed to constitute one and the same agreement. The facsimile, email or other electronically delivered signatures of the Parties shall be deemed to constitute original signatures, and facsimile or electronic copies hereof shall be deemed to constitute duplicate originals.

## 17 Further Assurance

Each Party undertakes to the other Party to execute or procure to be executed all such documents and to do or procure to be done all such other acts and things as may be reasonable and necessary to give all Parties the full benefit of this Agreement. At any time or from time to time hereafter, Seller shall, at the reasonable request of Purchaser, take all action as may be necessary to put Purchaser in actual possession and operating control of the Products and the Assigned Claims, and shall execute, acknowledge and deliver such further instruments of conveyance, power of attorney, sale, transfer or assignment, and take such other actions as Purchaser may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

*(The rest part of the page is intentionally left in blank)*

Signed for and on behalf of the Purchaser

**Bitmain Technologies Georgia Limited**

Signature _程然_

Title _____

*[Stamp: BITMAIN TECHNOLOGIES GEORGIA INCORPORATED, JULY 23 2021, GEORGIA]*

Signed for and on behalf of the Seller

**Burdy US Corporation**

Signature _Cai huijun_

Title _____

*[Stamp: For and on behalf of Burdy US Corporation, Authorised Signature(s)]*

## APPENDIX A

### Order

Seller shall arrange delivery within thirty (30) days after the Agreement is signed and will provide the following products:

| Description of Products | Price | | | |
|---|---|---|---|---|
| | Unit Price | Units | Total Rated Hashrate (T) | Total(USD) |
| S19 Pro 104T | 9.1 USD/T | 3,073 | 319,592 | 2,908,287.20 |
| S19j Pro100T | 9.1 USD/T | 1,440 | 144,000 | 1,310,400.00 |
| In Total | - | 4,513 | 463,592 | 4,218,687.20 |
| **TOTAL ESTIMATED PURCHASE PRICE: 4,218,687.20 USD** | | | | |
| The final Total Purchase Price will be calculated based on the actual hashrate at the time of delivery. | | | | |
| Down payment: twenty percent (20%) of the Total Purchase Price will be paid within fifteen (15) days after the execution of this Agreement. Balance payment: eighty percent（80%）of the Total Purchase Price will be paid within thirty (30) days after delivery of the Products. | | | | |

Seller's BANK ACCOUNT info:
Company Name: BURDY US CORPORATION
Company address:　　1013 CENTRE RD STE 403S, WILMINGTON, DE 19805
Account No.:　　857661653
Bank name: Chase Bank
Bank address:　　270 Park Ave, New York NY 10017
ABA Routing：021000021
SWIFT Code：CHASUS33

Wallet address for cryptocurrency USDT：
TRC20: TSMoo4iVb3VWzs6Pi8jdSi56g94C8feHjc
ERC20: 0xaE4282B137Ef866aA73ADabF74d791e655d3E6ba

**APPENDIX B**

**Bill of Sale**

(*Attached*)

# BILL OF SALE

## January 22, 2024

This Bill of Sale (this "Bill of Sale") is entered into by and between Burdy US Corporation ("Seller"), on the one hand, and Bitmain Technologies Georgia Limited ("Purchaser"), on the other hand.

## WITNESSETH:

WHEREAS, Seller and Purchaser are parties to that certain Sales and Purchase Agreement, dated as of even date herewith (the "Purchase Agreement"), pursuant to which, among other things, Seller agreed to sell, assign, transfer, convey and deliver to Purchaser, and Purchaser agreed to purchase from Seller, all of Seller's right, title and interest in and to the Products and the Assigned Claims.

WHEREAS, "Products" means the 4,513 Bitcoin mining machines delivered by Purchaser to the site located at 154 Hyatt St., Gaffney, SC 29341 in or around the period February to April 2022, including but not limited to the Bitcoin mining machines listed in the attachment hereto.

NOW, THEREFORE, pursuant to the terms and conditions of the Purchase Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

1. Defined Terms. Capitalized terms used but not defined herein shall have the respective meanings assigned to such terms in the Purchase Agreement.

2. Sale of Assets. Effective as of the date of full execution of the Purchase Agreement, Seller hereby sells, assigns, transfers, conveys and delivers to Purchaser, free and clear of all Liens, all of Seller's right, title and interest in, to and under the Products and the Assigned Claims.

3. Further Assurances. At any time or from time to time hereafter, Seller shall, at the reasonable request of Purchaser, take all action as may be necessary to put Purchaser in actual possession and operating control of the Products and the Assigned Claims, and shall execute, acknowledge and deliver such further instruments of conveyance, power of attorney, sale, transfer or assignment, and take such other actions as Purchaser may reasonably request in order to more effectively consummate the transactions contemplated by this Bill of Sale.

4. Effect of Agreement. This Bill of Sale is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement. Nothing contained in this Bill of Sale shall be construed to supersede, limit or qualify any provision of the Purchase Agreement. To the extent there is a conflict between the terms and provisions of this Bill of Sale and the terms and provisions of the Purchase Agreement, the terms and provisions of the Purchase Agreement shall govern.

5. Counterparts. This Bill of Sale may be executed in multiple counterparts, and by the different parties hereto in separate counterparts, each of which shall for all purposes be deemed to be an original, and all of which taken together shall constitute one and the same instrument. A signature delivered on any counterpart by facsimile or other electronic means shall for all purposes be deemed to be an original signature to this Bill of Sale.



6.  <u>Amendment</u>.  This Bill of Sale may not be amended or modified except by an instrument in writing signed by Seller and Purchaser.

7.  <u>Governing Law</u>.  This Bill of Sale shall in all respects be construed in accordance with and governed by the substantive laws of the State of Georgia, without reference to its choice of law rules.  Each party hereto agrees and acknowledges that the application of the laws of the State of Georgia is reasonable and appropriate based upon the parties' respective interests and contacts with the State of Georgia.  Each of the parties waives any right or interest in having the laws of any other state, including specifically, state law regarding the statute of limitation or other limitations period, apply to any party's state law claim, controversy or dispute which in any way arises out of or relates to this Bill of Sale or the transactions contemplated hereby.

8.  <u>Successors and Assigns</u>.  This Bill of Sale and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon Purchaser and Seller, and their respective successors and permitted assigns.

9.  <u>Assignment</u>.  Neither this Bill of Sale nor any of the rights, interests or obligations hereunder may be assigned by any party hereto, in whole or in part (whether by operation of law or otherwise), without the prior written consent of the other party hereto; provided, however, that without such prior written consent:  (a) Purchaser may assign its rights and/or delegate its obligations under this Bill of Sale (in whole but not in part) to any affiliate of Purchaser; (b) any or all of the rights and interests and/or obligations of Purchaser under this Bill of Sale: (i) may be assigned and/or delegated to any purchaser of a substantial portion of the assets of Purchaser or any of its affiliates (whereupon Purchaser shall cease to have any further liabilities or obligations hereunder); and (ii) may be assigned as a matter of law to the surviving entity in any merger, consolidation, share exchange or reorganization involving Purchaser or any of its affiliates; and (c) Purchaser and its affiliates shall be permitted to collaterally assign, at any time and in their sole discretion, their respective rights hereunder to any lender or lenders providing financing to Purchaser or any of its affiliates (including any agent for any such lender or lenders) or to any assignee or assignees of such lender, lenders or agent.

*[Signature Page Follows]*



2

IN WITNESS WHEREOF, the parties hereto have caused this Bill of Sale to be duly executed as of the date first set forth above.

**SELLER:**

**Burdy US Corporation**

By: _____Cai huijun_____
*For and on behalf of Burdy US Corporation*
*Authorised Signature(s)*

Title:


**PURCHASER:**

**Bitmain Technologies Georgia Limited**

By: _____程然_____ 

Title:

*[Signature Page to Bill of Sale]*